UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lindsey Finster, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    - against -<br><br>Sephora USA Inc.,<br><br>               Defendant | Case No. 6:22-cv-1187 (GLS/ML)<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    Sephora USA Inc. ("Defendant") manufactures, labels, markets, certifies and/or sells cosmetics advertised as "Clean" under its "Clean At Sephora" program ("Products").

2.    Consumers understand "clean" consistent with its dictionary definitions, which define it as describing something free from impurities, or unnecessary and harmful components, and pure.

3.    In the context of cosmetics, this means products made without synthetic chemicals and ingredients that could harm the body, skin or environment.

4.    One pioneer of "clean" cosmetics described "clean beauty [products]" as having minimal to no synthetic ingredients.

5.    A recent survey revealed that purchasing clean beauty products was important to sixty-four percent of American consumers, who are willing to pay more for them.

6.    Sales of clean cosmetics in the United States is approaching $2 billion per year.

7.    According to the Environmental Working Group ("EWG"), the average woman uses 12 cosmetic products with 168 different ingredients every day.

8. Despite increased knowledge of the possible harms of numerous ingredients, regulatory agencies have only banned nine ingredients.

9. In fact, the EWG described cosmetics as the least regulated consumer product, below cars, food, toys, and other essential items.

10. In this regulatory vacuum, companies have developed their own standards and terms purporting to inform consumers about the attributes of their products.

11. Defendant's "Clean At Sephora" initiative is a way for customers to select products which Sephora has evaluated to provide "The beauty you want, minus the ingredients you might not. This seal means formulated without parabens, sulfates SLS and SLES, phthalates, mineral oils, formaldehyde, and more."



12. Where products meet this criteria, they are promoted with the green "Clean At Sephora" seal bearing a checkmark and leaf symbol, in Sephora stores and online.



13. Elsewhere in its marketing materials, Defendant states, "Clean at Sephora means all of our clean brands comply with the criteria, which are focused on transparency in formulation and sourcing and the avoidance of certain ingredients."

14. Consumers who "see [the] Clean seal, [] can be assured that the product is formulated without specific ingredients that are known or suspected to be potentially harmful to human health and/or the environment."

15. However, a significant percentage of products with the "Clean At Sephora" contain ingredients inconsistent with how consumers understand this term.

16. For instance, the Saie Mascara 101 contains numerous synthetic ingredients, several of which have been reported to cause possible harms.

17. Its most predominant ingredient, polyglyceryl-6 distearate, is a compound of glycerol and stearic acid.

18. Glycerol is manufactured through hydrogenolysis, a chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

19. Because the global cosmetic industry uses millions of metric tons of glycerol per year, the only viable source for glycerol is as a byproduct in biodiesel production.

20. Though stearic acid is based on the natural source of palm oil, it is significantly altered through saponification, a chemical reaction where fats, oils, and lipids are converted by heat in the presence of aqueous alkali such as sodium hydroxide.

21. Another synthetic ingredient, polyglyceryl-10 myristate, is a type of polyglycerol ester of fatty acid (PGE), classified by one respected source as a toxin.[1]

22. PGEs are made by esterifying condensed glycerol with fatty acids in the presence of

---

[1] Sun Sara Spa.

alkaline catalysts at high temperatures and with vacuum pressure.

23. The Product contains cetyl alcohol, a synthetic substance manufactured by reducing ethyl palmitate with metallic sodium or under acidic conditions with lithium aluminum hydride as a catalyst.

24. Though the Cosmetic Ingredient Review Expert Panel and the FDA consider cetyl alcohol safe for use in cosmetics, numerous dermatologists believe it can be irritating for those with sensitive skin by altering the lipid bilayer of the epidermis and cause allergic dermal reactions.

25. The synthetic ingredient glyceryl caprylate is manufactured through chemical reactions such as esterification.

26. According to the book, Toxic Beauty, glyceryl caprylate is not a "clean" cosmetic ingredient because it is used as an agricultural pesticide to protect crops from mites and fungi.

27. Phenethyl alcohol, a preservative and fragrance ingredient, has never been assessed for safety, but reports based on animal studies show skin irritation at low doses, while moderate doses have a detrimental impact on the brain, nervous and reproductive system.

28. Sodium benzoate is another synthetic ingredient in the Product, produced when benzoic acid is combined with sodium hydroxide.

29. While the FDA has declared sodium benzoate by itself as "safe," numerous sources have cited the ease with which it converts to the carcinogen, benzene.[2]

30. This can occur based on the length of time a product with this ingredient is stored prior to use.

31. Potassium sorbate, a synthetic preservative, has been shown through in-vitro studies

---

[2] Nature's Repair, Dangers of Sodium Benzoate.

to be toxic to DNA and detrimental to immunity.[3]

32. Xanthan gum is a synthetic ingredient used as a viscosity agent in cosmetics.

33. It is manufactured from carbon sources by fermentation using the gram-negative bacterium Xanthomonas campestris.

34. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

35. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $26.00 for 0.31 oz (10g), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

36. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

37. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

38. Plaintiff is a citizen of New York.

39. Defendant is a Michigan corporation with a principal place of business in San Francisco, San Francisco County, California.

40. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

41. The members of the class Plaintiff seeks to represent are more than 100, because products designated as "Clean At Sephora" are sold from hundreds of Sephora stores and available

---

[3] Honest Weight Food Co-Op, The Banned List.

5

online in the States Plaintiff seeks to represent.

42. Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Onondaga County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

## Parties

43. Plaintiff Lindsey Finster is a citizen of Cleveland, Oneida County, New York.

44. Defendant Sephora USA Inc. is a Michigan corporation with a principal place of business in San Francisco, San Francisco County, California.

45. Defendant operates over a thousand Sephora stores in the United States and the Sephora website which sell beauty and cosmetic products.

46. Plaintiff purchased the Product from Sephora, 9090 Destiny USA Dr, Syracuse, NY 13290, between August and October 2022, and/or 2022, among other times.

47. Plaintiff read and relied on the "Clean at Sephora" seal to believe the Product's ingredients were not synthetic nor connected to causing physical harm and irritation.

48. Plaintiff bought the Product at or exceeding the above-referenced price.

49. Plaintiff paid more for the Product than she would have had she known the "clean" representations were false and misleading, or would not have purchased it.

50. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

## Class Allegations

51. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Products during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in

> the States of Texas, North Dakota, Wyoming, Idaho, Alaska, Iowa, West Virginia, North Carolina, and Utah who purchased the Products during the statutes of limitations for each cause of action alleged.

52. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

53. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

54. Plaintiff is an adequate representative because her interests do not conflict with other members.

55. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

56. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

57. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350

58. Plaintiff incorporates by reference all preceding paragraphs.

59. Plaintiff saw and relied on the "Clean at Sephora" seal to believe the Product's ingredients were not synthetic nor connected to causing physical harm and irritation.

60. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, because the lack of synthetic and potentially harm-causing ingredients is important to consumers like Plaintiff.

61. Plaintiff would not have purchased the Product or paid as much if the true facts had

been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

62. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

63. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

64. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

65. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that its ingredients were not synthetic nor connected to causing physical harm and irritation.

66. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

67. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, such as the high percentage of Americans who seek cosmetics described as "clean."

68. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant its ingredients were not

synthetic nor connected to causing physical harm and irritation.

69. Defendant's representations affirmed and promised that its ingredients were not synthetic nor connected to causing physical harm and irritation.

70. Defendant described the Product so Plaintiff believed its ingredients were not synthetic nor connected to causing physical harm and irritation, which became part of the basis of the bargain that it would conform to its affirmations and promises.

71. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

72. This duty is based on Defendant's outsized role in the market for this type of Product, a leading brand in the sale of cosmetics.

73. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

74. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

75. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

76. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

77. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its ingredients were not synthetic nor connected to causing physical harm and irritation.

78. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected that its ingredients were not synthetic nor connected to causing physical harm and irritation, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

## Fraud

79. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its ingredients were not synthetic nor connected to causing physical harm and irritation.

80. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

## Unjust Enrichment

81. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 11, 2022

11

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com