## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LINDSEY FINSTER, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 6:22-cv-01187-GLS-ML |
| vs. | ) ) | Honorable Gary L. Sharpe, District Judge |
| SEPHORA USA, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## OF SEPHORA USA, INC.

February 2, 2023

**LUPKIN PLLC**
Jonathan D. Lupkin
(NDNY Bar # 518754)
80 Broad Street, Ste 1301
New York, NY  10004
(646) 367-2771
jlupkin@lupkinpllc.com

**BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP**
Robert E. Shapiro (admission forthcoming)
Joshua W. Mahoney (*pro hac vice* forthcoming)
John Andreasen (*pro hac vice* forthcoming)
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
rob.shapiro@bfkn.com
joshua.mahoney@bfkn.com
john.andreasen@bfkn.com

*Attorneys for Defendant Sephora USA, Inc*

# <u>TABLE OF CONTENTS</u>                                                          **Page**

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT ALLEGATIONS................................................................................... 3

LEGAL STANDARD................................................................................................ 5

ARGUMENT ............................................................................................................. 5

   I.   Plaintiff Has Failed To Plausibly Allege Any Violation of New York General Business Law §§ 349 and 350. ................................................................................. 6

      A.   Plaintiff Has Not Plausibly Alleged That "Clean at Sephora" Misleads Reasonable Consumers About Whether Ingredients Are All-Natural. ......................................... 7

      B.   Plaintiff Has Not Plausibly Alleged That "Clean at Sephora" Misleads Reasonable Consumers About the Safety of Any Ingredients. .................................................. 10

   II.   Plaintiff's Vague Claim Of Violated "Consumer Fraud Acts" Should Be Dismissed Because It Is Duplicative And Implausible. ........................................................ 13

   III.  All Other Purported Causes Of Action Fail As A Matter Of Law. ................................. 14

      A.   Plaintiff Has Failed to Plead Any Breach of an Express Warranty. ........................ 15

      B.   Plaintiff Has Failed to Plead Any Breach of an Implied Warranty. ........................ 16

      C.   Plaintiff Has Failed to Plead Any Violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301........................................................................................... 17

      D.   Plaintiff Has Failed to Plead Fraud. ........................................................... 18

      E.   Plaintiff Has Failed to Plead Unjust Enrichment................................................. 18

CONCLUSION............................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................5

*Borenkoff v. Buffalo Wild Wings, Inc.*,
    No. 16-cv-8532 (KBF), 2018 WL 502680 (S.D.N.Y. Jan. 19, 2018)......................................19

*Bowling v. Johnson & Johnson*,
    65 F. Supp. 3d 371 (S.D.N.Y. 2014).......................................................................17

*Brown v. Kellogg Sales Co.*,
    No. 1:20-CV-7283-ALC, 2022 WL 992627 (S.D.N.Y. Mar. 31, 2022)................................14

*Brown v. Kerry Inc.*,
    No. 20-CV-9730 (PGG) (JLC), 2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021).....................16

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ..................................................................15

*In re ConAgra Foods, Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) ................................................................17

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) .........................................................................................18

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021)...............................................................9, 16

*Ebner v. Fresh Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...........................................................................6, 9

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).............................................................................6, 7

*Howze v. Mondelez Glob. LLC*,
    No. 22-CV-351 (JLS), 2023 WL 122307 (W.D.N.Y. Jan. 5, 2023).........................................6

*Jessani v. Monini N. Am., Inc.*,
    744 F. App'x 18 (2d Cir. 2018) ..................................................................6, 9, 10

*Jones v. Orgain, LLC*,
   No. 20 CV 8463 (VB), 2021 WL 4392783 (S.D.N.Y. Sept. 24, 2021) ..........................8, 9, 14

*Lee v. Mondelez Int'l, Inc.*,
   No. 22-CV-1127 (LJL), 2022 WL 16555586 (S.D.N.Y. Oct. 28, 2022) ..................10, 18, 20

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018)..............................................................................................6, 7

*Matsumura v. Benihana Nat'l Corp.*,
   465 F. App'x 23 (2d Cir. 2012) ...............................................................................................14

*Nelson v. MillerCoors, LLC*,
   246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................................................19

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
   875 F.3d 107 (2d Cir. 2017)..................................................................................................6

*Parks v. Ainsworth Pet Nutrition, LLC*,
   377 F. Supp. 3d 241 (S.D.N.Y. 2019) ...............................................................................18, 19

*Rivera v. S.C. Johnson & Son, Inc.*,
   No. 20-CV-3588 (RA), 2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021) ..........................12, 13

*Rugg v. Johnson & Johnson*,
   No. 17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) ..................................11

*Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*,
   441 F. Supp. 3d 1 (S.D.N.Y. 2020) .......................................................................................19

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009)....................................................................................................6

*Tomasino v. Estee Lauder Companies Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................................16

*Wynn v. AC Rochester*,
   273 F.3d 153 (2d Cir. 2001)..................................................................................................18

*Wynn v. Topco Assocs., LLC*,
   No. 19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ....................................9

## Statutes

15 U.S.C. § 2301 ...................................................................................................................17

Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 .......................................................5, 14, 17

N.Y. U.C.C. § 2-314 .............................................................................................................16

N.Y. U.C.C. § 2-607 ...................................................................................................................15

New York General Business Law § 349 ............................................................................... *passim*

New York General Business Law § 350 ............................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 9 .......................................................................................................................18

Fed. R. Civ. P. 12 .......................................................................................................................5

## PRELIMINARY STATEMENT

It is not plausible that reasonable consumers are or could be confused by the "Clean at Sephora" program at issue in this case. *By Plaintiff's own account,* the program is a model of transparency upon which Sephora USA, Inc. ("Sephora") tells consumers in plain terms exactly what they are and are not buying. The courts in this state and elsewhere have uniformly rejected such claims as a matter of law, even upon statements that are in no way as clear and trustworthy as those Sephora is acknowledged to have provided here. This Court should follow this well-trod path in this case and dismiss Plaintiff's complaint.

The basis of this entire case is Plaintiff's contention that the phrase "Clean at Sephora" does not mean what it says, but instead misleads consumers into believing that the products being sold have exclusively natural ingredients. Such a claim defies the ordinary use of words and ignores virtually every aspect of the subject phrase. In effect, Plaintiff would transform the phrase "Clean at Sephora" into something completely different, *viz. "Natural* at Sephora.*"* But the word is "clean," not "natural," a critical distinction, particularly given that there are clean elements that are not natural (some soaps) and natural elements that are not clean (dirt).

Moreover, the complete phrase is "Clean *at Sephora*," which expressly tells the consumer that the word is "clean" as used "at Sephora." And, as Plaintiff admits, Sephora prominently explains, *in plain terms*, exactly what it means by the phrase, doing so amidst the product-specific ingredient labels that already exist on Sephora products. Still further, consumers can consult Sephora's website if they wish to explore the "Clean at Sephora" program in greater detail.

The supposed confusion Plaintiff insists upon in this case is therefore illusory. Plaintiff does not allege that Sephora's definition is not prominently displayed or is not, in any sense, being met. Instead, Plaintiff relies exclusively on what, in spite of Sephora's admitted

transparency, *she* implausibly claims to think or how *she* personally may use the word, *viz.* in a way wholly different from how Sephora clearly states it is using it.  For obvious reasons, the courts do not countenance lawsuits that try to substitute such subjective and impressionistic usages for ordinary meanings or distrust the good sense and intelligence of *reasonable* consumers under *reasonable* circumstances, who are ordinarily not intent, as Plaintiff is, on twisting words for litigation purposes to mean something other than what they say or are said to mean.  Because any other approach would leave no word safe from linguistic manipulation, or even complete transformation, cases of this kind cannot survive and are routinely dismissed, as this case should be too.

Plaintiff also alleges the ingredients in "Clean at Sephora" products, although vetted and approved by numerous safety regulators, including the FDA, are somehow still dangerous.  What does Plaintiff use to substitute her judgment for that of the FDA?  Not a single reputable source or authority, but instead vague, carefully-excerpted quotations from obscure laypeople at the fringes of the beauty and food industries.  Courts routinely reject this too as a means of sustaining claims, along with attempts like Plaintiff's to make ingredients *sound* frightening by the curious device of describing the chemical process by which they are made.  The techniques of everyday chemistry may sound abstruse, but they are hardly evidence of the harmfulness of an ingredient, and courts refuse to accept such a manner of pleading as passing muster.

If not Plaintiff herself, then her lawyer should be aware of all of the foregoing.  A serial litigator, he is well known in the New York courts and elsewhere for similar failures in hundreds of consumer class actions he has filed, many with the same causes of action attempted here.[1]

---

[1] *E.g.*, Becky Sullivan, *The strawberry Pop-Tart case is just one of more than 400 lawsuits he has filed*, NPR, October 30, 2021, at https://www.npr.org/2021/10/30/1050175655/strawberry-pop-tarts-lawyer-spencer-sheehan-vanilla-lime-food-beverage.

Indeed, in the past few years alone, he has been repeatedly reminded of the Second Circuit's condemnation of the very linguistic manipulations and legal failures found in this Plaintiff's Complaint.  This case should end like so many of those others—dismissed for failure to plead any claim as a matter of law.

## RELEVANT ALLEGATIONS

According to the Complaint (Dkt. No. 1), Plaintiff is a citizen of New York who purchased an unspecified "Product"—possibly Saie Mascara 101—at a Sephora store in Syracuse.  (Compl. ¶¶ 43, 46; *see also* ¶ 16 (referring to Saie Mascara 101 but without defining it as the "Product" at issue).)  Sephora sells beauty and cosmetic products in stores throughout the United States and on the Sephora website.  (*Id*. ¶ 45.)

Of the products Sephora sells, some are labeled as being part of the "Clean at Sephora" program.  (*Id*. ¶ 1.)  As alleged in the Complaint, Sephora prominently explains what this means on displays in its stores and throughout its website: "This seal means formulated without parabens, sulfates SLS and SLES, phthalates, mineral oils, formaldehyde, and more."  (*Id*. ¶ 11.)  Elsewhere in marketing materials acknowledged by Plaintiff, Sephora explains that "Clean at Sephora means all of our clean brands comply with the criteria, which are focused on transparency in formulation and sourcing and the avoidance of certain ingredients."  (*Id*. ¶ 13.)  The label is meant to assure consumers "that the product is formulated without specific ingredients that are known or suspected to be potentially harmful to human health and/or the environment."  (*Id*. ¶ 14.)  Nowhere does the label say that "Clean at Sephora" products contain only natural ingredients, nor is there a promise that included ingredients could never possibly be harmful no matter what amount is used or an individual customers' particular sensitivities.

Plaintiff alleges that although the label says nothing about ingredients being all-natural, she nevertheless believed that anything marked "Clean at Sephora" would not contain *any*

synthetic ingredients.  (*Id.* ¶ 47.)  She alleges that consumers understand any cosmetics marketed with the word "clean" in her peculiar manner.  (*Id.* ¶¶ 2–3.)  She cites no studies, surveys, or other evidence as proof that hers is a widely held understanding among consumers.  Nor does she allege that Sephora ever markets these products with merely the word "clean," without the full "Clean at Sephora" label and its explanation.

Plaintiff also alleges that the "Clean at Sephora" label caused her to believe that no ingredients in those products could ever pose any risk of physical harm or irritation.  (*Id.*)  A wide variety of regulatory bodies have concluded they are safe.  Still, Plaintiff alleges that five ingredients in some "Clean at Sephora" products, however, pose serious risk.  She alleges that:

- Polyglyceryl-10 myristate is "classified by one respected source as a toxin," but that supposedly "respected" source is a single spa in California.  (*Id.* ¶ 21.)  *See* www.sunsaraspa.com.

- "[N]umerous dermatologists" believe cetyl alcohol "can be irritating for those with sensitive skin," but no such dermatologists are identified, and "the Cosmetic Ingredient Review Expert Panel and the FDA consider cetyl alcohol safe." (Compl. ¶ 24.)

- "[R]eports based on animal studies" show phenethyl alcohol can cause "skin irritation at low doses, while moderate doses have a detrimental impact," but Plaintiff provides no citations for these bare assertions.  (*Id.* ¶ 27.)

- "[N]umerous sources" find sodium benzoate can easily convert to a carcinogen, but Plaintiff's only source is a blog post by a small cosmetic brand that does not express expertise nor cite any support for its assertions.  (*Id.* ¶ 29.)  *See* https://www.naturesrepair.org/2021/01/13/dangers-of-sodium-benzoate/.  In contrast, "the FDA has declared sodium benzoate by itself as 'safe'."  (Compl. ¶ 29.)

- Potassium sorbate "has been shown through in-vitro studies to be toxic to DNA and detrimental to immunity," but Plaintiff's only source is a webpage for a local food co-op; that webpage provides not a single citation for the claim.  (*Id.* ¶ 31.) *See* https://www.honestweight.coop/page/the-banned-list-335.html .

Based on these allegations, Plaintiff purports to assert five causes of action: (1) violation of New York General Business Law §§ 349 and 350; (2) "Violation of State Consumer Fraud

Acts," none of which are specified; (3) breaches of express and implied warranties and violation of the Magnuson Moss Warranty Act; (4) fraud; and (5) unjust enrichment.  For the reasons described below, Plaintiff has failed to adequately plead any of these claims, warranting dismissal of her entire complaint under Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Unless facts properly alleged take the plaintiff's claims "from conceivable to plausible, the[] complaint must be dismissed." *Id*.  Plaintiffs cannot hide behind mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" in attempting to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

Plaintiff has not sufficiently pled any cause of action.  Her claim under the New York General Business Law ("GBL") fails because she does not have any plausible allegations that the "Clean at Sephora" representations are misleading to a significant portion of reasonable consumers.  Everything Sephora says about products with that label is true, and no reasonable consumer would understand those representations to mean what they do not say.  As such, Plaintiff has not plausibly alleged that any consumers besides herself are confused by what "Clean at Sephora" means.  And Plaintiff's allegations about supposed harms from certain ingredients are based on isolated lay conjecture that the Court should reject out of hand.

Plaintiff's other purported causes of action fare no better.  They are duplicative and all premised on the same alleged misrepresentations as her GBL claims.  They fail for the same reasons as those claims and more.

I.     **PLAINTIFF HAS FAILED TO PLAUSIBLY ALLEGE ANY VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350.**

GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350.  The pleading requirements for claims under both sections are the same—a plaintiff must sufficiently allege that (1) the defendant's acts were consumer oriented, (2) the acts or practices were deceptive or misleading in a material way, and (3) the plaintiff has been injured as a result.  *E.g.*, *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *Howze v. Mondelez Glob. LLC*, No. 22-CV-351 (JLS), 2023 WL 122307, at *2 (W.D.N.Y. Jan. 5, 2023) (noting that Sections 349 and 350 have identical elements, and dismissing similar claims brought by the same lawyer here).

When considering whether a marketing representation is deceptive or misleading, courts employ a "reasonable consumer" standard.  This asks whether the challenged conduct is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).  This is an *objective* standard.  *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017).  With respect to product marketing, the Second Circuit among many other courts consistently demands that plaintiffs "do more than plausibly allege that a label might conceivably be misunderstood by some few consumers.  Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled." *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order; quoting *Ebner v. Fresh Inc.*,

838 F.3d 958, 965 (9th Cir. 2016); extraneous punctuation omitted).  It is "well settled that a

court may determine as a matter of law" whether a plaintiff has met this requirement.  *Id.*

*(*quoting *Fink*, 714 F.3d at 741*).*

"Context is crucial" for making this determination.  *Mantikas*, 910 F.3d at 636 (quoting

*Fink*, 714 F.3d at 742).  The marketing representation at issue must be considered "as a whole,

including disclaimers and qualifying language."  *Id*.  Although not always dispositive, "the

presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Fink*,

714 F.3d at 742.  For example, information about product ingredients on a side or back of a

product can clarify information on the front so long as it confirms what the front already

suggests.  *Cf. Mantikas*, 910 F.3d at 636–37 (finding that reasonable consumers expect an

ingredient list to confirm, not correct, other representations about the product).

### A.    Plaintiff has not plausibly alleged that "Clean at Sephora" misleads reasonable consumers about whether ingredients are all-natural.

The "Clean at Sephora" program is in no way misleading under these governing

standards.  According to Plaintiff's complaint itself, "Clean at Sephora" marketing materials

state only that products with that label exclude certain, specific ingredients.  The short form of

that explanation provides some key examples of excluded ingredients.  If the consumer wishes to

know all the ingredients that are included in the product, the consumer can further consult the

ingredient list on the product itself, which confirms what the label represents.  *Cf. Id*. at 637.  If a

consumer wants to know every ingredient that Sephora excludes from "Clean at Sephora"

products, the consumer can consult Sephora's website.

Plaintiff has not pled *any* facts to show that reasonable consumers do or even could

conclude, despite such complete transparency, that "Clean at Sephora" products include only all-

natural ingredients.  As Plaintiff admits, Sephora makes no such promise.  Indeed, words like

"natural," "organic," and the like never appear on the label or elsewhere.  To support her contention, Plaintiff alleges only that consumers associate the word "clean" with natural, as if when they clean their hands or wash their faces they must believe they are using only products from nature.  (Compl. ¶¶ 2–3.)

Not only is it absurd to think Sephora meant "natural" when it said "clean," but Sephora does not use the word "clean" in isolation.  Instead, Sephora uses the phrase "Clean at Sephora" along with a clarifying definition that describes the kinds of ingredients that are excluded.  And the products' packaging contains a complete list of the ingredients that are included, which matches perfectly with the definition.

Plaintiff's allegation about consumers' understanding of the word "clean" is a mere conclusion without any facts to back it up.  And it lacks plausibility.  Indeed, Plaintiff claims that consumers associate "clean" with its dictionary definitions, meaning "free from impurities, or unnecessary and harmful components, and pure."  (Compl. ¶ 2.)  This alleged definition—provided without citation—says nothing at all about a product being all-natural.  But then, in a subjectively inspired, fact-defying linguistic backflip, Plaintiff somehow concludes that "[i]n the context of cosmetics, this means products made without synthetic chemicals . . . ."  (*Id.* ¶ 3.) There is literally no coherent support for this statement anywhere in the Complaint (or anywhere else).

The same lawyer representing Plaintiff in this case attempted to proceed and saw his claims dismissed upon a nearly identical allegation in *Jones v. Orgain, LLC*, No. 20 CV 8463 (VB), 2021 WL 4392783 (S.D.N.Y. Sept. 24, 2021).  There, the plaintiff alleged that the description of the product as "Clean" was misleading because consumers associate use of the word "Clean" with products that "are free from artificial ingredients and other ingredients

consumers find undesirable," such as "synthetic, artificial ingredients which can have a detrimental effect on health." *Id.* at *1. The court disagreed that a product using the word "clean" automatically made any such promise:

> Plaintiff fails plausibly to allege the product packaging made any statement or representation that it contained no processed, synthetic, or artificial ingredients. Indeed, she cannot; . . . nowhere on the labeling does defendant make a sweeping representation that the product contains no processed, synthetic, or artificial ingredients.

*Id.* at *3. That court's reasoning compels dismissal here too. As in the case of the product at issue in *Jones*, Sephora's use of the word "clean" in connection with its products never even hints that the products have no synthetic ingredients, let alone says so in a way that could mislead a reasonable consumer.

Plaintiff also fails to allege standard hallmarks of widespread consumer confusion called for by the Second Circuit, such as a survey or other data covering "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances." *Jessani*, 744 F. App'x at 19 (quoting *Ebner*, 838 F.3d at 965); *see Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 583 n.8 (S.D.N.Y. 2021) (dismissing false advertising claims by same attorney for Plaintiff here where plaintiffs "offered no consumer surveys suggesting confusion by or deception of" consumers as a whole); *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021) (deception inadequately pled in part because "[p]laintiffs d[id] not attempt to marshal consumer survey data to support their allegation" that consumers were confused). Instead, Plaintiff relies on selectively quoted blog posts and webpages from small businesses, which not only lack reliability and authority but are presented without evidence that any significant number of consumers have even read them, let alone agreed with them.

A similar tactic was tried and rejected in *Lee v. Mondelez Int'l, Inc.*, No. 22-CV-1127 (LJL), 2022 WL 16555586 (S.D.N.Y. Oct. 28, 2022).  There, the plaintiff also tried to use website articles and blogs to show consumers' understanding of chocolate terms.  The court rejected the stratagem:

> Plaintiff makes no allegations with respect to the distribution or readership of these articles and blogs in order to connect them to the understanding of the reasonable consumer. . . . Plaintiff references no surveys, let alone any allegation of fact—anecdotal or scientific—to provide empirical support . . . . It thus is a far leap to assume that because Plaintiff has  able to locate articles that discuss the differences between raw cacao powder and cocoa powder that a consumer who purchases a chocolate bar advertised to contain "x% cacao" would understand that reference to be to the raw form of the cacao bean rather than to its more processed version.

*Id.* at *13 (citations omitted).  Plaintiff makes the same error here, attempting the "far leap" of connecting webpages on the far extremities of the internet to some greater consumer understanding.  These allegations and sources do not show even a possibility that the label might be misunderstood by the reasonable consuming public generally and thus fall well short of the plausibility pleading requirements.  *See Jessani*, 744 F. App'x at 19.

### B.     Plaintiff has not plausibly alleged that "Clean at Sephora" misleads reasonable consumers about the safety of any ingredients.

Plaintiff has also failed to allege that "Clean at Sephora" misleads consumers about the safety of included ingredients.  To begin with, "Clean at Sephora" makes no promises of this kind.  In fact, "Clean at Sephora" makes *no representations at all* about what is *included* in the products.  Instead, "Clean at Sephora" is about what is *excluded*, which is expressly limited to certain "specific ingredients."  (Compl. ¶ 14.)  Here, Plaintiff does not allege that any ingredients "Clean at Sephora" says are excluded have been included.  Instead, Plaintiff alleges that a handful of ingredients about which Sephora makes no statement at all and never promises to exclude might be harmful.

No reasonable consumer would or could be misled into believing that a program promising only to exclude certain ingredients is somehow making representations about what is included.  Indeed, Plaintiff has pled no facts to show that "a significant portion" of reasonable consumers would plausibly misconstrue the label in this way.  The courts have dismissed harmfulness claims even upon more direct and compelling allegations than those here.  For example, in *Rugg v. Johnson & Johnson*, the defendant labelled baby products "hypoallergenic," which the plaintiff said was misleading because some ingredients could sensitize the skin, cause cancer, or cause other harms. No. 17-cv-05010-BLF, 2018 WL 3023493, at *2 (N.D. Cal. June 18, 2018).  The court disagreed.  Noting that dictionary definitions of "hypoallergenic" refer to only the low likelihood of causing an allergic response, the court found it "completely implausible that a reasonable consumer would understand the use of the term 'hypoallergenic' on a product's label to mean that the product does not contain any ingredients, in any concentration, which could 'sensitize' the skin, cause cancer, or have any other negative effect, regardless of whether such effect constitutes an allergic reaction." *Id.* at *3.  If a baby product actually claiming its ingredients are "hypoallergenic" does not cause reasonable consumers to believe all ingredients are perfectly safe no matter the circumstances, surely a product not making any claim at all but merely designated as part of the defined program "Clean at Sephora" creates no such expectations either.

But this is only the beginning of Plaintiff's pleading problems.  She admits that respected and authoritative sources find the ingredients safe.  And her allegations to the contrary by themselves demonstrate their implausibility.  Most of the allegations are mere descriptions of the ingredients' chemistry, not allegations that they might cause harm.  The few allegations about potential harm cite no reputable sources of any kind:

- Plaintiff alleges polyglyceryl-10 myristate is toxin.  (Compl. ¶ 21.)  Her source?  An obscure spa.  (*Id.* at n.1.)

- Plaintiff alleges cetyl alcohol can be "irritating for those with sensitive skin."  (*Id.* ¶ 24.) But she admits that experts at "the Cosmetic Ingredient Review Expert Panel and the FDA consider cetyl alcohol safe for use in cosmetics."  (*Id.*)  Her countervailing source?  "Numerous dermatologists," none of whom she identifies.  (*Id.*)

- Plaintiff alleges phenethyl alcohol can be irritating at low doses and detrimental at moderate doses.  (*Id.* ¶ 27.)  Yet she never alleges how such "doses" are measured and how that compares to the amounts in the products under standard use.  And she cites only "reports based on animal studies" that she does not identify.  (*Id.*)

- "[T]he FDA has declared sodium benzoate safe," says Plaintiff, but alleges sodium benzoate can easily convert to benzene, a carcinogen.  (*Id.* ¶ 29.)  Yet she does not allege whether or how sodium benzoate can be converted to benzene within or through use of the products.  And her source for the allegation is a blog post by a small cosmetics company that itself professes no such expertise.  (*Id.* at n.2.)

- Plaintiff alleges that potassium sorbate is "toxic to DNA and detrimental to immunity."  (*Id.* ¶ 31.)  Yet she is basing this on "in-vitro studies," not studies of cosmetic use, and her only citation for the alleged studies is a webpage listing banned ingredients at a local food co-op.  (*Id.*)

In summary, Plaintiff does not cite to a single reputable source that shows any ingredients are harmful.  The only reputable sources referenced in the Complaint say just the opposite.

Again, Plaintiff's lawyer should know better.  His client in *Rivera v. S.C. Johnson & Son, Inc.* alleged that the phrase "Non-Toxic Formula" on Windex products would cause a reasonable consumer to believe that nothing in those products could be harmful, when in fact various chemical components in those products could be irritating or harmful.  No. 20-CV-3588 (RA), 2021 WL 4392300, at *1–2 (S.D.N.Y. Sept. 24, 2021).  The court agreed that reasonable consumers might interpret "non-toxic" in this way, but it found the plaintiff had failed to plausibly allege any components were otherwise.  The plaintiff had not alleged the amounts and concentrations of the allegedly harmful ingredients in Windex, nor pointed to any expert analysis

showing that such amounts were sufficient to cause harm under reasonable use; this doomed the claims.  *Id.* at 5–6.

In this case, Plaintiff has done even less.  Not only has she provided no basis to believe reasonable consumers would understand "Clean at Sephora" as she reinterprets it, but she relies on obscure, unreliable sources to allege harmfulness and never even so much as claims that amounts and concentrations in "Clean at Sephora" products are sufficient to cause the harms she alleges.  Her claims are not plausible and should be dismissed.

## II.     PLAINTIFF'S VAGUE CLAIM OF VIOLATED "CONSUMER FRAUD ACTS" SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE AND IMPLAUSIBLE.

Plaintiff's second purported cause of action claims Sephora violated "Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class."  (Compl. ¶ 62.)  She does not identify which statutes this refers to.  No matter: this cause of action should be dismissed because it is duplicative of her claims brought under GBL §§ 349 and 350 and therefore suffers from the same plausibility shortfalls as those claims.

Plaintiff does not provide any distinction between her claim brought under the GBL or these unidentified state consumer fraud acts.  Just the opposite; she admits these additional consumer fraud claims "are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce." (Compl. ¶ 62.)  She provides no additional facts that are relevant to this claim, does not allege any distinct damages, and refers to only the alleged "deception" on which she bases her GBL claims.  Because it is based on the same facts as the GBL claims, it too is not supported with any plausible allegations of deception and therefore fails as a matter of law no matter what statutes might apply.  And to the extent Plaintiff is attempting to plead recovery under these other states' laws for herself, this cause of action would need to be dismissed as duplicative in any event.  *See*

*Matsumura v. Benihana Nat'l Corp.*, 465 F. App'x 23, 29 (2d Cir. 2012) (holding separately

pleaded claims based on same operative facts and without distinct damages should be dismissed).

## III.     ALL OTHER PURPORTED CAUSES OF ACTION FAIL AS A MATTER OF LAW.

All of Plaintiff's remaining claims are similarly based on the false premise that the

"Clean at Sephora" label is misleading. Because her claims under GBL §§ 349 and 350 are

insufficiently pled as a matter of law, her remaining claims should be dismissed, too.

Courts in the Second Circuit routinely dismiss as a matter of course all causes of action

tacked on to alleged violations of GBL §§ 349 and 350 when the GBL claims are not sufficiently

pled.  Recent cases filed by Plaintiff's lawyer, in fact, have dismissed the very same claims

tacked on here:

> Because he has not pleaded an underlying materially misleading
> representation, the other claims in this case, which he pleaded on the
> basis that the label would likely deceive or mislead, must be
> dismissed. Courts in this District have taken this approach in
> substantially similar lawsuits asserting the same or substantially
> similar claims after dismissing the GBL claims.

*Brown v. Kellogg Sales Co.*, No. 1:20-CV-7283-ALC, 2022 WL 992627, at *6 (S.D.N.Y. Mar.

31, 2022) (dismissing claims for negligent misrepresentation, breaches of express warranty,

breaches of implied warranty of merchantability, violation of Magnuson Moss Warranty Act,

fraud, and unjust enrichment, and collecting other cases taking the same approach); *see also, e.g.*,

*Jones v. Orgain, LLC*, 2021 WL 4392783, at *4 (same).  Because Plaintiff here has failed to

plausibly plead any violations of GBL §§ 349 and 350, and her tacked-on claims are premised on

the same inadequate allegations of deception, this Court can follow so many others in dismissing

the remaining claims as a matter of course.

If the Court chooses to look more closely at the remaining claims, it will see numerous

other reasons they should be dismissed.  These additional reasons are summarized below.

### A.    Plaintiff has failed to plead any breach of an express warranty.

Plaintiff alleges that Sephora expressly warranted that the ingredients contained in "Clean at Sephora" products were "not synthetic nor connected to causing physical harm and irritation" through its advertising, marketing, and packaging.  (Compl. ¶¶ 65–66.)  She goes on to allege that Sephora breached this express warranty.  Sephora made no such express warranty, and Plaintiff never provided the notice required to bring such a claim.

Under New York law, this claim requires that a plaintiff plausibly allege "that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment."  *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (citations omitted).  As an additional requirement, if a buyer of a product seeks to bring such a claim, the buyer must first provide the seller with timely notice of the alleged breach of warranty. N.Y. U.C.C. § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

All these requisite elements are missing from Plaintiff's Complaint.  Sephora never warranted that "Clean at Sephora" products are "not synthetic nor connected to causing physical harm and irritation"; Sephora's program states only that certain ingredients are excluded.  Therefore, there is no express warranty promising what Plaintiff claims.  Because Sephora made no such warranty, Plaintiff could not have reasonably relied on it, nor could Sephora have breached it and injured Plaintiff as a result.

Moreover, although Plaintiff attempts to plead the notice requirement, the allegations are mere conclusions reciting that element without any facts in support.  (Compl. ¶¶ 74–75.)  And these conclusions reflect Plaintiff's failure to provide the necessary notice, as she states she "provided or *provides* notice" to Sephora (*id.* ¶ 74, italics added), as if filing the lawsuit can itself

constitute the necessary pre-suit notice.  Indeed, nearly identical language was deemed insufficient to plausibly allege the requisite notice in *Brown v. Kerry Inc.*, No. 20-CV-9730 (PGG) (JLC), 2021 WL 5446007, at *8 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted*, No. 20-CIV-9730 (PGG) (JLC), 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) (dismissing claim for breach of express warranty because complaint lacked sufficient allegations that plaintiff notified seller of claimed breach).  For all these reasons, this claim should be dismissed.

      **B.**    **Plaintiff has failed to plead any breach of an implied warranty.**

Plaintiff similarly fails to plead any breach of an implied warranty of merchantability.  To be merchantable, goods "must be . . . fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. § 2-314(2). A breach of the implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used."  N.Y. U.C.C. § 2-314(2)(c).  Such a warranty is limited, however; it "does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality." *Cosgrove*, 520 F. Supp. 3d at 586 (citations and extraneous punctuation omitted).

Plaintiff has not plausibly alleged that "Clean at Sephora" products fail to meet these requirements.  Because this claim is based on Sephora's allegedly misleading labeling of its products as "clean," this claim must suffer the same fate as Plaintiff's GBL claims.  *See Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 263 (E.D.N.Y. 2014) ("[b]ecause the plaintiff's breach of warranty claims are based on the same conclusory allegations as her §§ 349 and 350 claims, they do not provide a sufficient factual basis to establish a plausible breach.").  As with the GBL claims, there are no plausible allegations that "Clean at Sephora" products fail to conform to the representations made on the label or fail to meet a minimum level of quality.  As a result, this claim should be dismissed.

**C.      Plaintiff has failed to plead any violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301.**

The Magnuson Moss Warranty Act ("MMWA") does not apply to Sephora's "Clean at Sephora" program.  The MMWA "grants relief to consumers who are damaged by the failure of a warrantor to comply with any obligation under a written warranty."  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) (citations and extraneous punctuation omitted).  Under the MMWA, a "written warranty" is defined in relevant part as a "written affirmation of fact or written promise made in connection with the sale of a consumer product . . . which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301(6)(A).  Sephora provided no such warranty.

"Clean at Sephora" provides, at most, a description of what the associated products do not contain.  Mere product descriptions such as this do not fall within the ambit of the MMWA because they do not promise the product is free of any defects, nor do they promise performance over time.  *Bowling*, 65 F. Supp. 3d at 378 ("restores enamel" label was "at most a product description" because it was "not a promise of performance over time").  Indeed, this would hold true regardless of whether Sephora's "Clean at Sephora" marketing had expressly represented what Plaintiff allegedly took it to mean, such as the products being all natural.  *See, e.g.*, *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012) ("The statement that Wesson Oil is '100% Natural' is not an assertion that the product is defect free or that it will meet a specific level of performance over a specified period of time").  Accordingly, the "Clean at Sephora" program is not subject to the MMWA, and this claim should be dismissed.

**D.      Plaintiff has failed to plead fraud.**

Plaintiff's fraud claim is nowhere close to sufficiently pled.  To state a claim for fraud

under New York and federal law, a plaintiff must plead with particularity "(1) a

misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3)

which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff

reasonably relied; and (5) which caused injury to the plaintiff."  *Wynn v. AC Rochester*, 273 F.3d

153, 156 (2d Cir. 2001); Fed. R. Civ. P. 9(b).  This claim should be dismissed because Plaintiff

has failed to plausibly allege that Sephora made any misrepresentation with its "Clean at

Sephora" program.  Plaintiff has also failed to plead the requisite scienter because she alleges no

facts that "give rise to a strong inference" that Sephora intended to defraud its customers, as Rule

9(b) requires.  *Lee*, 2022 WL 16555586, at *14 (allegation that "Defendants intentionally makes

materially false and misleading representations regarding the nature of the Products" was a mere

conclusion that failed to satisfy Rule 9(b)).

**E.      Plaintiff has failed to plead unjust enrichment.**

Plaintiff's last claim is for unjust enrichment, alleging that Sephora inequitably obtained

profits from "Clean at Sephora" products that it should disgorge.  (Compl. ¶ 81.)  This claim is

duplicative of Plaintiff's other claims and must be dismissed for that reason alone.

"Under New York law, unjust enrichment is available only in unusual situations when,

though the defendant has not breached a contract nor committed a recognized tort, circumstances

create an equitable obligation running from the defendant to the plaintiff."  *Parks v. Ainsworth*

*Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (citations and extraneous

punctuation omitted). But "unjust enrichment is not a catchall cause of action to be used when

others fail."  *Corsello v. Verizon N.Y., Inc*., 18 N.Y.3d 777, 790 (2012).  Indeed, unjust

enrichment is not a viable cause of action when it merely duplicates or attempts to replace

another claim.  *Shane Campbell Gallery, Inc. v. Frieze Events, Inc*., 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020).  When an unjust enrichment claim is that duplicative, even pleading in the alternative—which Plaintiff failed to do here—will not save it.  *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) ("even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action").

As a result, courts in the Second Circuit have consistently held that unjust enrichment claims duplicative of GBL claims must be dismissed.  *See, e.g., Parks*, 377 F. Supp. 3d at 248–49 ("unjust enrichment claim that Defendant was enriched at Plaintiff's expense through payment for the Products duplicates his other claims based on the same alleged misrepresentation that the Products are 'natural,' and is therefore dismissed."); *Borenkoff v. Buffalo Wild Wings, Inc*., No. 16-cv-8532 (KBF), 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) ("The essence of [plaintiff's] unjust enrichment claim is . . . entirely duplicative of [plaintiff's] GBL § 349 claim, and therefore the unjust enrichment claim must be dismissed under New York law.").

This count is unquestionably duplicative of Plaintiff's other claims.  The entire count is no more than a single sentence; it depends on the allegations of the other claims to make sense. Plaintiff's allegation that Sephora was unjustly enriched because "the Product was not as represented" is the very same premise on which all of her other claims are based.  Accordingly, her claim for unjust enrichment fails as a matter of law and should be dismissed.

## CONCLUSION

No reasonable consumer could ever be misled about "Clean at Sephora" in the way Plaintiff alleges.  Plaintiff has alleged no plausible facts in support of her claims, and there is no reason to believe she will ever be able to do so given the nature of the "Clean at Sephora"

program and its definition.  *Cf. Lee*, 2022 WL 16555586 at *16 (granting dismissal and finding

leave to amend futile in light of product label that would not mislead any reasonable consumer).

For all the foregoing reasons, Sephora respectfully requests that the Court dismiss Plaintiff's

Complaint in its entirety, with prejudice, and grant such other relief as is just and appropriate.


Dated:  February 2, 2023                Respectfully submitted,

 

Jonathan D. Lupkin  (NDNY Bar # 518754)
LUPKIN PLLC
80 Broad Street, Ste 1301
New York, NY  10004
(646) 367-2771
jlupkin@lupkinpllc.com


Robert E. Shapiro (admission forthcoming)
Joshua W. Mahoney (*pro hac vice* forthcoming)
John Andreasen (*pro hac vice* forthcoming)
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
rob.shapiro@bfkn.com
joshua.mahoney@bfkn.com
john.andreasen@bfkn.com

*Attorneys for Defendant Sephora USA Inc.*

**CERTIFICATE OF SERVICE**

I, Jonathan D. Lupkin, an attorney admitted to practice before this court, hereby certifies that on February 2, 2023, I caused the foregoing Memorandum of Law in Support of Motion to Dismiss by Sephora USA, Inc. to be served on counsel of record in this case by filing the document via ECF on the electronic docket of this case.

Dated: February 2, 2023

/s/Jonathan D. Lupkin
Jonathan D. Lupkin